**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**BRISTOL MYERS SQUIBB COMPANY,** **PLAINTIFF**

**v.** **CASE NO. 4:26-CV-00618-LPR**

**DEBBIE MACK, RODNEY RICHMOND, LENORA NEWSOME, CLINT BOONE, LYN FRUCHEY, BRIAN JOLLY, HAROLD H. SIMPSON, and BETH ANN DAVENPORT, in their official capacities as members of the Arkansas State Board of Pharmacy,** **DEFENDANTS**

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**BRISTOL MYERS SQUIBB COMPANY,** **PLAINTIFF**

**v.** **CASE NO. 4:26-CV-00618-LPR**

**DEBBIE MACK, RODNEY RICHMOND, LENORA NEWSOME, CLINT BOONE, LYN FRUCHEY, BRIAN JOLLY, HAROLD H. SIMPSON, and BETH ANN DAVENPORT, in their official capacities as members of the Arkansas State Board of Pharmacy,** **DEFENDANTS**

# REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

Table of Contents ........ i

Table of Authorities ........ ii

Argument ........ 1

I. This case is moot ........ 1

A. The Board has carried its burden to show that Act 630 enforcement cannot reasonably be expected to recur ........ 2

B. BMS misconstrues the record in a failed attempt to show Act 630 enforcement could reasonably be expected to recur ........ 5

II. Sovereign immunity bars this suit ........ 9

Conclusion ........ 13

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*281 Care Committee v. Arneson*,
638 F.3d 621 (8th Cir. 2011) ........ 11

*281 Care Committee v. Arneson*,
766 F.3d 774 (8th Cir. 2014) ........ 11

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013) ........ 4, 9

*Auer v. Trans Union, LLC*,
902 F.3d 873 (8th Cir. 2018) ........ 10

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016), ........ 3

*City of Mesquite v. Aladdin's Castle, Inc.*,
455 U.S. 283 (1982) ........ 4

*FBI v. Fikre*,
601 U.S. 234 (2024) ........ 2

*Felts v. Green*,
91 F.4th 938 (8th Cir. 2024) ........ 4

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ........ 3, 7

*LaBatte v. Gangle*,
161 F.4th 1109 (8th Cir. 2025) ........ 4

*Lankford v. Sherman*,
451 F.3d 496 (8th Cir. 2006) ........ 4

*McCarthy v. Ozark Sch. Dist.*,
359 F.3d 1029 (8th Cir. 2004) ........ 4

*Minn. Chapter of Assoc. Builders & Contractors v. Ellison*,
153 F.4th 695 (8th Cir. 2025) ........ 10-12

*Minn. Chapter of Assoc. Builders & Contractors v. Ellison*,
146 S. Ct. 1603 (2026) ........ 10

*Missouri Prot. & Advoc. Servs., Inc. v. Carnahan*,
499 F.3d 803 (8th Cir. 2007) ..................... 4

*Mullin v. Al Otro Lado*,
146 S. Ct. 2079 (2026) ..................... 3

*In re Smith*,
921 F.2d 136 (8th Cir. 1990) ..................... 1

*Teague v. Cooper*,
720 F.3d 973 (8th Cir. 2013) ..................... 4

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
582 U.S. 449 (2017) ..................... 3

*Whole Woman's Health v. Jackson*,
595 U.S. 30 (2021) ..................... 9-11

*Ex parte Young*,
209 U.S. 123 (1908) ..................... 10-12

**Rules & Statutes**

Federal Rule of Civil Procedure 4 ..................... 6

## Argument

The Board's motion to dismiss presented two independent grounds for dismissal: mootness and sovereign immunity. This case can be dismissed on either ground, and BMS's opposition does not show otherwise.[1] To the contrary, BMS's voluntary withdrawal of its preliminary-injunction motion suggests that it, too, recognizes there's no remotely reasonable likelihood that the Board will directly contravene its resolutions and begin enforcing Act 630. *See* Dkt. No. 30. After all, if BMS truly believed there was a real risk that the Board will change course and begin enforcement, BMS would presumably continue to press for interim protection considering the "significant and irreparable" harm BMS said Act 630's enforcement would cause it. Dkt. No. 14, at 30. But BMS declined to do so, and that decision speaks volumes. In short, and as explained below, this Court lacks jurisdiction. The Court should therefore dismiss this case.

### I. This case is moot.

"Mootness goes to the very heart of Article III jurisdiction." *In re Smith*, 921 F.2d 136, 138 (8th Cir. 1990). When "mootness . . . exists," it "destroy[s] … jurisdiction." *Id.* As the Board explained in its motion to dismiss, this case is moot—and this Court lacks Article III jurisdiction—due to the Board's twofold resolution not to take any action to enforce Act 630 against any entity and to enter a court-enforceable settlement agreement with any entity that desires a binding guarantee of non-enforcement.[2]

[1] BMS combined its motion-to-dismiss opposition with its summary-judgment brief. Defendants submit this brief only as a reply in support of their motion to dismiss. They will separately file a motion to stay summary-judgment briefing pending a decision on the motion to dismiss to conserve party and judicial resources and, if that motion is denied, will file a separate summary-judgment opposition.

[2] *See* MTD Br., Dkt. No. 28, at 14–17; King Decl. Ex. D, Board Resolution Regarding Act 630 Settlement Authority, Dkt. No. 35-2, at 12–13; *id.*, Ex. E, Board Resolution Regarding Act 630 Nonenforcement, Dkt. No. 35-2, at 15.

### A. The Board has carried its burden to show that Act 630 enforcement cannot reasonably be expected to recur.

In response to the Board's mootness argument, BMS contends that "this matter is not moot under the voluntary cessation doctrine."[3] Under that doctrine, "a defendant's voluntary cessation of a challenged practice will moot a case only if the defendant can show that the practice cannot reasonably be expected to recur." *FBI v. Fikre*, 601 U.S. 234, 241 (2024) (citation modified). Although this is a "formidable burden," Dkt. No. 37 at 11 (quoting *Fikre*, 601 U.S. at 241), the Board has met that burden here. For starters, it's unclear that the voluntary cessation doctrine could even theoretically apply. That's because, notwithstanding BMS's characterization of the Board's actions in *preparation* for Act 630's effective date as enforcement, *see, e.g., id.* at 11, the Board hasn't ever actually enforced Act 630 against any entity. Indeed, as BMS itself explains, Act 630 only even takes effect on September 1, 2026. *See id.* at 9. Yet despite the Board noting that the voluntary cessation doctrine's potential application here is doubtful because Act 630 has never been enforced, *see* Dkt. No. 28, at 16-17, BMS relegates its discussion of this point to a conclusory and unsupported footnote, *see* Dkt. No. 37, at 17 n.3.

Regardless, even ignoring this threshold issue and assuming the Board's preparatory actions count as enforcement, this case is nothing like *Fikre*. There, the government offered a "sparse declaration" that a single individual would "not be placed on the No Fly List in the future based on the currently available information," implicitly leaving the door open to placing that individual back on the No Fly List, including for allegedly unconstitutional reasons, if the "available information" were to change. 601 U.S. at 242. In contrast, the Board unanimously adopted a resolution that it

[3] BMS Br., Dkt. No. 37 at 9.

will not take *any* action to enforce Act 630 against *any* entity, authorized the settlement of all Act 630 challenges (regardless of whether the settling entity ever filed suit), and removed all Act 630 applications from its agenda.[4] And the Board explained the motivation for its decision: this Court's *Novartis* opinion and the Board's desire to "abide by the United States Constitution, conserve resources and avoid unnecessary litigation."[5] Not only is there no evidence the Board has any intention of enforcing Act 630 in the future, but it has also provided entities with a binding promise of non-enforcement in the form of a pre-approved Board settlement agreement.[6] And by specifically permitting settling entities to sue the Board in the (extraordinarily unlikely) event of a breach, the agreement fully preserves settling entities' rights.

This case is thus moot and nothing like the cases on which BMS relies. *Mullin v. Al Otro Lado*, 146 S. Ct. 2079, 2090 n.7 (2026) (case wasn't moot where government conceded that challenged practice remained an "important tool" that it "would likely resume . . . as soon as . . . conditions warranted"); *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 457 n.1 (2017) (case wasn't moot where Missouri Governor merely "announced" change in policy and "[t]he parties agree[d]" that Missouri could "revert to its policy of excluding religious organizations" from grant program); *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 163 (2016), *as revised* (Feb. 9, 2016) (case wasn't moot where defendant made offer of settlement and offer of judgment to class representative individually, and class representative rejected both); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 193 (2000) (case against alleged

---

[4] King Decl. Ex. D, Board Resolution Regarding Act 630 Settlement Authority, Dkt. No. 35-2, at 12–13; *id.*, Ex. E, Board Resolution Regarding Act 630 Nonenforcement, Dkt. No. 35-2, at 15.

[5] King Decl. Ex. D, Board Resolution Regarding Act 630 Settlement Authority, Dkt. No. 35-2, at 12.

[6] King Decl. Ex. D, Board Resolution Regarding Act 630 Settlement Authority, Dkt. No. 35-2, at 12–13.

polluter wasn't moot where "[t]he effect of both [alleged polluter]'s compliance and the facility closure on the prospect of future violations [was] a disputed factual matter" and the alleged polluter "retain[ed] its [National Pollutant Discharge Elimination System] permit"); *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 & 289 n.11 (1982) (case wasn't moot where city "announced" at oral argument its "intention" to reenact challenged ordinance if district court's judgment were vacated); *Felts v. Green*, 91 F.4th 938, 941 (8th Cir. 2024) (case wasn't moot where city official "unblocked" plaintiff on Twitter "after she filed the complaint" and "subsequent events" did not make it "absolutely clear" that plaintiff "could not reasonably be blocked again for tweets critical of the" city official); *Lankford v. Sherman*, 451 F.3d 496 (8th Cir. 2006) (case wasn't moot where repeal of challenged regulation only applied to half of plaintiff's claims and depended on federal government approval that hadn't yet been obtained).

Instead, this case is more like the cases that BMS tries to distinguish. *See, e.g.*, *Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) (shoe company's issuance of "Covenant Not to Sue" as to its competitor mooted case); *LaBatte v. Gangle*, 161 F.4th 1109, 1117 (8th Cir. 2025) (dismissal of DUI prosecution and expiration of statute of limitations made it "absolutely clear" that allegedly wrongful prosecution could not recur); *Teague v. Cooper*, 720 F.3d 973 (8th Cir. 2013) (case was moot due to repeal of law even though it was "almost guarantee[d]" that legislature would "revisit the issue" in the next legislative session); *Missouri Prot. & Advoc. Servs., Inc. v. Carnahan*, 499 F.3d 803, 811 (8th Cir. 2007) (obligation to obey state court order that provided requested relief mooted case); *McCarthy v. Ozark Sch. Dist.*, 359 F.3d 1029, 1035 (8th Cir. 2004) (case was moot when amended law provided philosophical and religious "exemption" to immunization requirement that was "available to all," which was "precisely" the relief sought by plaintiffs).

Put simply, the Board has absolutely no intention of enforcing Act 630 against BMS or any other entity, and it cannot reasonably be expected to begin such enforcement in the future

**B. BMS misconstrues the record in a failed attempt to show Act 630 enforcement could reasonably be expected to recur.**

Despite the Board's non-enforcement resolution and settlement offering, BMS contends that "Defendants' unilateral action can be rescinded or modified at any time,"[7] and that the Board's non-enforcement resolution "can be abandoned or modified just as easily as it was adopted."[8] To support that argument, BMS points to three statements taken out of context. None show that enforcement is possible, much less likely to recur.

*First*, BMS points to statements by Executive Director John Kirtley at a June 16, 2026, meeting of the Arkansas State Pharmacy Board—over a month before the Board's July 28 resolutions.[9] That meeting took place after the issuance of this Court's *Novartis* opinion, and the statement was in response to requests that Director Kirtley had received from drug manufacturers to enter confidential non-enforcement agreements and similar requests asking the Board not to take any action on any Act 630 applications. Director Kirtley explained why, in his view at that time, the Board could not lawfully do that:

> But the problem is we have—now I'm not an attorney, if I misspeak someone can watch the recording and critique it—but we have a state law that says we have to take timely action on this and our interpretation of what we're supposed to do with it for the granting of exemptions and exceptions and the Court saying that it doesn't count for one company. There may be another court case, there could be a decision tomorrow or this afternoon that we're missing that enjoins the entire law or that stops us from taking any action with it. But until, you know, unless and until that

[7] Dkt. No. 37, at 10.

[8] Dkt. No. 37, at 12.

[9] BMS Br., Dkt. No. 37, at 11.

> happens, you know, we have no choice but to follow what this instructs us to do, which is why we're here today.[10]

As Dr. Kirtley readily acknowledged, he's "not an attorney." He's a pharmacist. His understanding in June about what he believed Arkansas law required the Board to do did not account for the supremacy of federal law under the U.S. Constitution. And his June 16 statements are not reflective of the Board's current understanding of what the law requires them to do, much less the subsequent statements and unanimous Board actions. On July 28, the Board quashed any notion that it had "no choice but to follow what [Act 630] instructs [it] to do" by unanimously resolving *not* to take any action to enforce Act 630 against any entity and to enter a court-enforceable settlement agreement with any entity that wished to settle.

*Second*, selectively quoting from the settlement terms approved by the Board, BMS contends that the terms "expressly address a scenario in which 'the Board attempts to enforce Act 630.'"[11] That phrase appears in two places in the settlement agreement. Both times in section 2, which is titled "No Challenges to Act 630," and which reads as follows:

> The settling entity shall not file any lawsuit against the Board or its members and their successors challenging Act 630, unless *the Board attempts to enforce Act 630* against the settling entity in contravention of this settlement agreement (referred to as the "Agreement").
>
> If the settling entity has already filed a lawsuit against the Board's members challenging Act 630, the entity shall promptly file a Notice of Dismissal pursuant to Federal Rule of Civil Procedure 4[1](a)(1)(A)(i), dismissing all claims without prejudice. The settling entity shall not file any new lawsuit against the Board or its members and their successors challenging Act 630, unless *the Board attempts to enforce Act 630* against the entity in contravention of the Agreement.[12]

---

[10] King Decl. Ex. G, Video Recording of June 16, 2026 Arkansas State Pharmacy Board Meeting, 1:38:42–1:39-22.

[11] BMS Br., Dkt. No. 37, at 14 (quoting King Decl. Ex. D, Board Resolution Regarding Act 630 Settlement Authority, Dkt. No. 35-2, at 12–13).

[12] King Decl. Ex. D., Dkt. No. 35-2, at 13 (emphases added).

That phrase cannot reasonably be read to indicate that the Board is leaving the door open so that it can "resume enforcing the act," as BMS contends.[13] Instead, that phrase merely ensures that settling entities' rights are fully preserved in the unlikely event they need to sue the Board in the future. If the Board violates a settlement agreement, the agreement makes plain that the settling entity may freely sue the Board to halt enforcement, notwithstanding its own promise to dismiss any pending suit and refrain from future litigation in the agreement. Therefore, these provisions *benefit* settling entities—and BMS's suggestion that they represent something nefarious is baseless. Indeed, no rational entity would enter an agreement that continues to bind them in the event of the opposing party's breach, no matter how unlikely. The Board's approved settlement terms thus afford settling entities the full protections any business would demand.

*Third*, BMS asserts that "the Board issued a memorandum [on July 31] just days after the July Board Vote informing interested parties that the Board had decided to take no further action '*at this time*.'"[14] According to BMS, "[t]hat tentative language falls well short of establishing that 'the challenged conduct *cannot* reasonably be expected to start up again.'"[15] In full, Director Kirtley's July 31 memorandum states:

> I am writing you today to share the following in relation to Act 630 of 2025. Earlier this week the Arkansas State Board of Pharmacy discussed Act 630 of 2025 and passed a motion to take no enforcement action in light of a recent court opinion. The July 28th meeting is available to watch on YouTube at [hyperlink].
>
> With that motion, the Board decided that there was no further consideration or action to be taken on any submitted applications at this time.[16]

---

[13] BMS Br., Dkt. 37, at 14.

[14] BMS Br., Dkt. No. 37, at 14 (quoting King Decl. Ex. F., Dkt. No. 35-2, at 17).

[15] BMS Br., Dkt. No. 37, at 14 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).

[16] King Decl. Ex. F., Dkt. No. 35-2, at 17.

No reasonable person could read the phrase "at this time" to mean that the Board's non-enforcement and settlement resolutions were "tentative." The non-enforcement resolution is unequivocal: "the Board will not take any action to enforce Act 630 of 2025 against any entity."[17] So too is the offered settlement agreement:

> Upon the Effective Date and dismissal of any currently pending lawsuit challenging Act 630 brought by the settling entity, the Board agrees—on behalf of the Board and its members and their successors in their official capacities as members of the Board—that Act 630 will not be enforced against the settling entity or its subsidiaries, its officers, employees, agents, successors, or assigns. The Board and its members and their successors will not seek to hold the settling entity liable in any judicial, administrative, or other proceeding for fines, penalties, or other sanctions based on the settling entity's failure to comply with Act 630's requirements, regardless of the date on which such noncompliance occurred.[18]

Nothing about the settlement language is "tentative." It is absolute: "Act 630 will not be enforced against the settling entity."[19] Moreover, Director Kirtley's memorandum wasn't a new policy pronouncement or a shift away from what the Board had resolved to do just three days earlier. It was simply memorializing what had already occurred at the Board's meeting. Because the Board had resolved to not "enforce Act 630 of 2025 against any entity,"[20] no actions will "be taken on any submitted applications at this time."[21] The offhand inclusion of the phrase "at this time" does not transform the Board's unequivocal non-enforcement resolution into a suggestion of future enforcement action. And again, any suggestion by BMS that the Board is leaving the door open for future enforcement action is belied by the Board's approving settlement terms to any entity that wants additional assurance that Act 630 will not be enforced against them. The Board cannot

---

[17] King Decl. Ex. E, Board Resolution Regarding Act 630 Nonenforcement, Dkt. No. 35-2, at 15.

[18] King Decl. Ex. D, Board Resolution Regarding Act 630 Settlement Authority, Dkt. No. 35-2, at 12.

[19] King Decl. Ex. D, Board Resolution Regarding Act 630 Settlement Authority, Dkt. No. 35-2, at 12.

[20] King Decl. Ex. E, Board Resolution Regarding Act 630 Nonenforcement, Dkt. No. 35-2, at 15.

[21] King Decl. Ex. F., Dkt. No. 35-2, at 17.

rescind a signed settlement agreement. Once it's signed, it's binding on the Board and its successors.

Even ignoring the settlement terms, nothing BMS points to negates Defendants' showing that enforcement is not reasonably likely to occur in the future. Indeed, the Board's unanimous non-enforcement resolution is clear and applies to everyone. Contrary to BMS's framing, whether the Board "might in the future" rescind or modify its non-enforcement resolution and "might then undertake an enforcement action" against BMS "is a series of hypotheticals" which does not amount to a live case or controversy under Article III. *Cf. Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021) (applying that logic to the *Ex parte Young* fiction). The Board vote was unanimous based on their current understanding of what the law requires them to do. There is no plausible reason to think that the Board will change course, especially when it has entered settlement agreements with other entities and has approved binding settlement terms for anyone who wants to avail themselves of that option. More importantly, whether the Board could *hypothetically* resume enforcement at some future date is not the test under the voluntary cessation doctrine. The test is whether the Board's enforcement of Act 630 against BMS cannot "*reasonably* be expected to recur." *Already, LLC*, 568 U.S. 85, 91 (emphasis added). The Board has carried that burden.

## II. Sovereign immunity bars this suit.

As the Board explained in its motion to dismiss, this case is barred by sovereign immunity.[22] Indeed, "*Ex parte Young*'s historic exception to state sovereign immunity" does not apply here because the Board has unequivocally resolved to take no Act 630 enforcement action against any

[22] MTD Br., Dkt. No. 28, at 18–19.

entity. *See Minn. Chapter of Assoc. Builders & Contractors v. Ellison*, 153 F.4th 695, 701 (8th Cir. 2025), *cert. denied*, 146 S. Ct. 1603 (2026). In response, BMS argues that the Board's sovereign immunity argument "is just a second attempt to argue mootness" and that "it fails for the same reasons" as the Board's mootness arguments.[23] BMS likewise argues that the Board cannot "end-run" this "live" dispute by voluntarily stopping its conduct and "claiming immunity."[24] To bolster that argument, BMS principally relies on opinions from the Fourth, Fifth, and Ninth Circuits.[25] What is dispositive in this case, however, is Supreme Court and Eighth Circuit precedent.

Indeed, while BMS's arguments elide this distinction, *Ex parte Young* requires both a connection to enforcement *and* imminence: the state officer must "threaten and [be] about to commence proceedings." *Ellison*, 153 F.4th at 698 (quoting *Ex parte Young*, 209 U.S. 123, 156–57 (1908)) (alteration in original); *see Whole Woman's Health v. Jackson*, 595 U.S. 30, 56 (2021) (Thomas, J., concurring in part and dissenting in part) (emphasizing that "the prospect of state suit must be imminent" (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 382 (1992))). Courts must "consider each defendant's role—connection with enforcement and imminence—lest [the court] 'make the state a party' and violate its sovereign immunity." *Ellison*, 153 F.4th 698 (quoting *Ex parte Young*, 209 U.S. at 157).

The latter requirement is dispositive here. In *Ellison*, the Eighth Circuit explained that, although the Minnesota Attorney General possessed enforcement authority, his declaration that he had "no present intention to commence" enforcement meant that the plaintiffs "lack[ed] standing to sue, divesting the district court of subject matter jurisdiction." 153 F.4th at 702 (quoting *Auer v.*

---

[23] BMS Br., Dkt. No. 37, at 14.

[24] BMS Br., Dkt. No. 37, at 16.

[25] BMS Br., Dkt. No. 37, at 16–18.

*Trans Union, LLC*, 902 F.3d 873, 877 (8th Cir. 2018)). That conclusion accords with *Whole Woman's Health v. Jackson*, where a unanimous Supreme Court held that plaintiffs "c[ould] not establish personal injury fairly traceable to [the private defendant's] allegedly unlawful conduct," after the defendant supplied "sworn declarations" stating that "he possesse[d] no intention to file a[] . . . suit against them." 595 U.S. 30, 48 (2021); *see id.* (remanding for dismissal of claims against private defendant for lack of standing).

Here, the Board's formal actions provide even stronger evidence that enforcement is not imminent: it authorized a settlement framework through which manufacturers may obtain binding protection against enforcement, it publicly and unanimously resolved not to enforce Act 630 against any entity, and it removed all Act 630 applications from its agenda. Indeed, the sequence of events here is similar to that in *281 Care Committee v. Arneson*, 638 F.3d 621 (8th Cir. 2011) ("*Care Committee I*"), and *281 Care Committee v. Arneson*, 766 F.3d 774 (8th Cir. 2014) ("*Care Committee II*"). In *Care Committee I*, the Eighth Circuit held that the Minnesota Attorney General had a sufficient connection to enforcement of a challenged campaign-speech statute to be a proper *Ex parte Young* defendant. 638 F.3d at 632. On remand, the Attorney General's office filed an affidavit explaining that it would not prosecute anyone for the conduct in which plaintiffs wished to engage. *Care Committee II*, 766 F.3d at 796. In *Care Committee II*, the Eighth Circuit dismissed the claims against the Attorney General based on this disavowal of enforcement, explaining that the plaintiffs were "not subject to or threatened with any enforcement proceeding by the attorney general," so the Attorney General was now entitled to Eleventh Amendment immunity. *Id.* at 797.

The same is true here. No Board member "threaten[s] and [is] about to commence" enforcement proceedings against BMS or any other entity. *Ellison*, 153 F.4th at 698. To the

contrary, far from threatening enforcement, the Board has unanimously resolved not to enforce Act 630 against any entity and offered binding protection against enforcement to any entity that wants it. BMS therefore cannot invoke *Ex parte Young* to overcome sovereign immunity.

As a final point, BMS seeks to distinguish *Ellison* because in that case, "the attorney general possessed discretionary authority; no statute required him to enforce the challenged law," while here, "Act 630 imposes mandatory statutory duties" that the Board cannot ignore.[26] Yet BMS overlooks that the plaintiffs in *Ellison* made a similar argument that the Eighth Circuit rejected. In *Ellison*, the plaintiffs argued that "the Attorney General's declaration does not 'override' his statutory obligations." 153 F.4th at 702. The Eighth Circuit explained why that argument failed:

> "[S]ome duty in regard to the enforcement" is not enough: *Ex parte Young* also requires the officer to "threaten and [be] about to commence proceedings." 209 U.S. at 156. By ignoring this "about to commence proceedings" requirement, MNABC's position effectively collapses the *Ex parte Young* exception to require only "some connection with the enforcement" of the Act.

*Id.*

So too here. The Board's "duty in regard to the enforcement" of Act 630 is not enough. *See id.* *Ex parte Young* also requires that the Board "threaten and [be] about to commence proceedings" under Act 630. 209 U.S. at 156. Like *Ellison*, BMS's argument that the Board has a mandatory duty to enforce Act 630 effectively collapses the *Ex parte Young* exception to require only a connection with enforcement and not threatened and imminent enforcement. Because the Board's resolutions foreclose both the threat of enforcement and imminence of proceedings, the *Ex parte Young* fiction does not apply, and sovereign immunity bars this suit.

[26] BMS Br. Dkt. No. 37, at 19.

## CONCLUSION

This Court lacks Article III jurisdiction because this case is moot. And even if it weren't moot, sovereign immunity bars BMS's claims. This case should be dismissed.

Respectfully submitted,

By: Ryan Hale
Ark. Bar No. 2024310
Senior Assistant Attorney General

Office of the Arkansas Attorney General
Bob R. Brooks Jr. Justice Building
101 West Capitol Avenue
Little Rock, AR 72201
(501) 295-7419
(501) 682-2591 fax
ryan.hale@arkansasag.gov

*Counsel for Defendants*